This is an appeal from an indictment and conviction of assault with intent to ravish. Sentence was fixed by the trial court at twelve years' imprisonment. The appellant is represented by court appointed counsel both at trial and on appeal.
At trial there was no motion to exclude the evidence presented by the state, no motion for a directed verdict or request for an affirmative charge, and no exception to the oral charge of the court. The motion for new trial did not challenge the sufficiency of the evidence. The evidence that the appellant is guilty as charged is undisputed. The record reveals that on December 11, 1976, the appellant attacked the prosecutrix, rendered her unconscious, pulled her pants and underwear down around her knees, "straddled" her as she lay on the sidewalk and beat her about the face and head. The only witness for the appellant presented testimony on the issue of insanity.
 I
Initially the appellant predicates error on the failure of the trial court to employ a jury in determining the issue of the appellant's competency to stand trial. *Page 1016 
Prior to trial defense counsel filed a "petition for inquisition upon alleged insane prisoner". Pursuant to Title 15, Section 428, Code of Alabama 1940, the trial judge, being "reasonably satisfied" that the appellant was insane, ordered the appellant committed to Bryce State Mental Hospital until "restored to his right mind". In April of 1977 the Forensic Evaluation Board of Bryce Hospital reported that the appellant was "so restored" and requested that criminal proceedings be resumed.
On the day of trial, defense counsel filed a motion reciting that the appellant was incompetent and unable to aid and assist in his own defense. At that time the trial judge heard evidence on the competency of the appellant to stand trial.
The Honorable Thomas H. Boggs, one of the court appointed attorneys for the appellant, testified that he was convinced that the appellant was incompetent to stand trial, that he could not communicate with his client, that he received no cooperation, and that the appellant was "either unable, or unwilling, to participate in his own defense".
On cross examination by the state, Mr. Boggs admitted that the appellant had been certified competent by Bryce Hospital, that he could not tell whether the appellant was malingering, and that the appellant probably knew that he was charged with a crime but did not know the reason for it or "anything about the incident". In response to a question by the court, counsel acknowledged that the trial judge had sent the appellant to Bryce Hospital on two or three occasions and each time the hospital had certified the appellant as sane.
William H. Smith, Sheriff of Marengo County, testified that while the appellant had been in the county jail during the past couple of months, he had been screaming, yelling, beating on the walls and causing general disruption. However the Sheriff stated that the appellant would yell, scream, and beat when he wanted something or did not get exactly what he wanted. The Sheriff stated that "I've never been in the jail that he didn't want something." "He wants something all the time." Sheriff Smith also testified to a suicide attempt by the appellant where the appellant tied a sheet around his neck and tied it to the bars. The appellant did not choke because he had also tied the sheet under his arms so that when "hanging" the sheet was tighter under his arms than around his neck.
Dr. Mike Haley, a counseling psychologist for the West Alabama Mental Health Center, was called as a witness by the state. He stated that he knew the appellant well, that he had seen the appellant very frequently in the past two years, and that he had spent probably one hundred hours interviewing and counseling him. Dr. Haley stated that the appellant was a paranoid schizophrenic but that his schizophrenia was under control through medication. Dr. Haley interviewed the appellant the day before the hearing and found it difficult to communicate with him because the appellant "was intentionally making it difficult; that he was malingering". Malingering, very simply, means faking. In Dr. Haley's opinion the appellant was competent and not psychotic on the day of the hearing.
The defense then called Dr. Mike Mundy, a clinical psychologist and the executive director of the West Alabama Mental Health Center. Dr. Mundy testified that he observed the appellant the day before the hearing and
 ". . . I know this patient from past experience . . . the man yesterday was definitely demonstrating some psychotic-like behavior; whether or not it was malingering, I'm not sure. . . . (A)nd I do know from personal experience that he does have a very adept quality at feigning or malingering. As far as yesterday's evaluations, I couldn't tease out whether or not he was malingering or truly psychotic."
* * * * * *
 "I don't, as of yesterday's interview, I'm not sure what he would do in terms of his own defense . . .; . . . he's able to demonstrate psychotic qualities when it suits his situation. . . ." *Page 1017 
Dr. Mundy concluded that he did not think the appellant could participate in his own defense and understand the charges against him.
On cross examination Dr. Mundy stated that the appellant would be more apt to malinger, or feign, at the time when his trial was coming up than at any other time. He affirmed that he simply could not determine whether the appellant was malingering or truly psychotic in the interview held one day past.
Based on this testimony the trial judge found the appellant competent for trial.
 "I've sent him to Bryce two or three times and they keep sending him back saying nothing is wrong with him; and based on that, and based on the file and based on the testimony, and based on the testimony I've heard today, and based on the past actions of the whole file from Bryce, I find him competent for trial."
After this finding the jury was brought into the courtroom whereupon the appellant caused some disruption of the proceedings, making statements to the trial judge and referring to him as "Jesus Christ". The trial judge then instructed the bailiff to take the jury back to the jury room, instructed the deputy sheriff to handcuff the appellant because of his disruptive behavior and warned the appellant that upon further disruption he would be removed from the courtroom.
On appeal the appellant argues that Title 15, Section 426, Code of Alabama 1940, and Pate v. Robinson, 383 U.S. 375,86 S.Ct. 836, 15 L.Ed.2d 815 (1966) require that the issue of the competency of the accused to stand trial be submitted to a jury.
The pertinent portion of Title 15, Section 426, reads as follows:
 "If any person charged with any felony be held in confinement under indictment, and the trial court shall have reasonable ground to doubt his sanity, the trial of such person for such offense shall be suspended until the jury shall inquire into the fact of such sanity, such jury to be impaneled from the regular jurors in attendance for the week or from a special venire, as the court may direct."
The Supreme Court of Alabama explained the function of this statute in light of the United States Supreme Court decision inPate v. Robinson.
 "In the case of Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), the Supreme Court of the United States enunciated the rule that if a sufficient doubt as to the present competency of the accused is made known to the trial court, then the court must hold a hearing on the issue of competency to stand trial. The defendant is constitutionally entitled to such a hearing. The law in this State until very recently has been that it is in the complete discretion of the trial judge to implement any sanity investigation, whether under § 425, 426, or 428 of Title 15, Code of Alabama, 1940, Recompiled 1958. Numerous cases have in the past supported this proposition. See Seibold v. State, 287 Ala. 549, 253 So.2d 302 (1970); Ex Parte Bush, 247 Ala. 351, 24 So.2d 353 (1945); Burns v. State, 246 Ala. 135, 19 So.2d 450 (1944); Whitfield v. State, 236 Ala. 312, 182 So. 42 (1938); Rohn v. State, 186 Ala. 5, 65 So. 42 (1914); Granberry v. State, 184 Ala. 5, 63 So. 975
(1913).
 "However, in Pierce v. State, 292 Ala. 745, 293 So.2d 489 (1974) (writ quashed), the `old' approach was abandoned in favor of one more in keeping with the due process requirements of Pate. Chief Justice Heflin wrote in Pierce:
 "`The law is now settled that if sufficient doubt of the defendant's present mental competency is raised before or during trial, then it is mandatory that there be a judicial hearing to determine his mental competency to stand trial, and that the refusal of the trial court to grant such a hearing is reviewable.'
 "To the extent the above cited cases conflicted with this holding, they were overruled."
 Tillis v. State, 292 Ala. 521, 523-524, 296 So.2d 892, 894 (1974).
In Edgerson v. State, 53 Ala. App. 581, 586, 302 So.2d 566
(1974), this court noted that *Page 1018 
since Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836,15 L.Ed.2d 815 (1966) and Pierce v. State, 52 Ala. App. 422, 293 So.2d 483
(1973), cert. quashed, 292 Ala. 745, 293 So.2d 489 (1974), the provisions of Title 15, Section 426, Code, are considered "constitutionally mandatory rather than discretionary, and the refusal of the trial court to submit this issue to the jury is reviewable". See also Buttrum v. State, 57 Ala. App. 422,329 So.2d 111 (1975).
However, in this case, the trial judge did not err or abuse his discretion in failing to submit to a jury the issue of the appellant's competency to stand trial because he determined, in effect, that there was no reasonable ground or bona fide doubt of that competency. Ray v. State, 53 Ala. App. 292,299 So.2d 337 (1974); Rich v. State, 51 Ala. App. 556, 287 So.2d 873
(1973); Cunningham v. State, 54 Ala. App. 514, 310 So.2d 235
(1975); Persons v. State, Ala.Cr.App., 339 So.2d 1092 (1976);Billups v. State, Ala.Cr.App., 338 So.2d 478 (1976); Barfieldv. State, 54 Ala. App. 15, 304 So.2d 257 (1974); Buttrum v.State, 57 Ala. App. 425, 329 So.2d 114, cert. denied, 295 Ala. 394, 329 So.2d 116 (1976).
The procedure followed in this case was essentially that mandated in Buttrum, supra, where the trial court, after a hearing, found no reasonable ground to doubt the defendant's sanity. This doubt must arise in the mind of the trial judge, and if he has no reasonable doubts on the matter, he need not call a jury (even if one be required where doubts arise, seeMoore v. State, 52 Ala. App. 179, 290 So.2d 246 (1974); Hocuttv. State, Ala.Cr.App., 344 So.2d 194 (1977); Holmes v. State, Ala.Cr.App., 342 So.2d 28, cert. denied, Ala., 342 So.2d 36
(1977)). However the trial judge must not be unreasonable or arbitrary in the exercise of this discretion. Minniefield v.State, 47 Ala. App. 699, 260 So.2d 607 (1972); Brinks v. Stateof Alabama, 465 F.2d 446, cert. denied, 409 U.S. 1130,93 S.Ct. 940, 35 L.Ed.2d 263 (5th Cir. 1972).
In determining whether a reasonable doubt as to sanity exists, the trial judge may make investigation and hear evidence. He is not required to rely upon the bare suggestion of present incompetency. See Weihofen, Mental Disorder as aCriminal Defense, p. 448.
Considering all the evidence we do not think the trial judge was compelled to conclude that he should have entertained a bona fide or reasonable doubt as to the competency of the appellant to stand trial. Rich, supra. Consequently there was no abuse of his discretion in failing to empanel a separate jury on this question.
 II
In rebuttal, the state presented testimony by a deputy sheriff that he overheard the appellant state to other jail inmates on the day of his trial that he was going to go over and "fake the courtroom". At trial testimony had been presented that the appellant could and had faked or malingered his psychotic symptoms. The record discloses no objection to the question or the answer of the deputy. Therefore nothing is presented for this court to review. 7 Alabama Digest, Criminal Law, 1036.1 (1).
We have carefully searched the record for error and have found none. Therefore the judgment of the trial court is due to be affirmed.
AFFIRMED.
All Judges concur.